1  **POTTER HANDY LLP**
   Mark D. Potter (SBN 166317)
2  mark@potterhandy.com
   James M. Treglio (SBN 228077)
3  jimt@potterhandy.com
4  9845 Erma Road, Suite 300
   San Diego, CA 92131
5  (858) 375-7385
   Fax: (888) 422-5191
6
7  Attorney for Plaintiff DANILO VICTORIO

8

9                 **UNITED STATES DISTRICT COURT**

10         **BY AND FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| DANILO VICTORIO, an individual, on behalf of himself and all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MODIS INC., d/b/a MODIS IT, Inc., a Florida corporation, MODIS E&T, LLC, Florida Limited Liability Company, inclusive,<br><br>Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>**(1) FAIR CREDIT REPORTING ACT, 15 U.S.C. 1681b(b)(3)(A)**<br><br>**(2) CALIFORNIA INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT, CAL. CIVIL CODE § 1786, et seq.,**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Danilo Victorio (hereinafter "Plaintiff" or "Victorio"), an individual, on behalf of himself and all persons similarly situated, alleges upon personal knowledge as to himself and his acts stated herein, and as to all other matters upon information and belief as follows:

1. This is a class action arising out of the use of consumer reports to conduct background checks for employment purposes. Defendant MODIS, INC., d/b/a MODIS IT, Inc., and Defendant MODIS E&T, LLC (collectively "Defendants" or "Modis"), are staffing agencies that assist other companies with the hiring of skilled labor. To that end, Defendants routinely obtain consumer reports from consumer reporting agencies in connection with their hiring practices, and use those consumer reports as a basis to take adverse action against job applicants and their employees, all without complying with the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), and the Investigative Consumer Reporting Agencies Act, California Civil Code § 1786, et seq. ("ICRAA"). Plaintiff, individually and on behalf of all others similarly situated, seeks statutory damages, actual damages, compensatory damages, punitive damages, and expenses of this litigation, including reasonable attorneys' fees and costs, due to Defendants' systematic and willful violation of the FCRA and the ICRAA.

## II.     JURSIDICTION AND VENUE

**2.** This Court has jurisdiction over the subject of this action pursuant to 15 U.S.C. §§ 1681, as well as 28 U.S.C. §§ 1331 and 1337.  This Court has supplemental jurisdiction over the claims brought under the laws of the State of California pursuant to 28 U.S.C. § 1367 since the matters at the heart of the background check case form part of the same case or controversy.

3. The Court also has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of the Court and Defendants at all times mentioned herein have maintained regional offices in Walnut Creek, Santa Clara, San Jose, and San Francisco, has transacted business within this judicial district, in Santa Clara County and in the State of California; and the violations of law herein described have been committed within this judicial district, in Santa County, and the United States of America. Moreover, by doing business in this judicial district and committing violations of the Fair Credit Reporting Act, and the California Investigative Consumer Reporting Agencies Act, Defendants' conduct has had an adverse effect upon the finances of residents of this

judicial district.

4. Venue as to each Defendant is proper in this judicial district, pursuant to 15 U.S.C. §§ 22 and 28 and 28 U.S. C. §1391(b)(1) and (2), because Defendants transact business and/or have transacted business during the relevant time period within the counties encompassed by the jurisdiction of the United States District Court for the Northern District of California. In addition, a substantial part of the acts giving rise to the claims set forth herein occurred in this judicial district, a substantial portion of the affected interstate trade and commerce was carried out in this district.

## III.     THE PARTIES

### A.     PLAINTIFF

5. Plaintiff DANILO VICTORIO is a resident of the State of California, and resides in the County of Santa Clara. In February of 2018, Plaintiff applied for a position with the Defendants, which was to be an eighteen month assignment paying him, thirty dollars per hour, and located within the County of Santa Clara. After undergoing a background check, Plaintiff's offer of employment was rescinded, but Plaintiff was never provided with a copy of his criminal background check, or with a summary of rights under the Fair Credit Reporting Act.

### B.     DEFENDANTS:

6. Defendant MODIS INC., d/b/a Modis IT, Inc., is a Florida Corporation with its principal place of business in Florida. Defendant MODIS, INC., keeps and maintains a regional headquarters in Santa Clara County.

7. Defendant MODIS E&T, LLC, is a Florida Limited Liability Company, and wholly owned subsidiary of MODIS, INC., with its principal place of business in the State of Florida. Defendant MODIS E&T, LLC also keeps and maintains a regional headquarters in Santa Clara County.

8. California courts have recognized that the definition of "employer" for purposes of enforcement of the California Labor Code goes beyond the concept of traditional employment to reach irregular working arrangements for the purpose of preventing evasion and subterfuge of California's labor laws. *Martinez v. Combs*, 49 Cal.4th 35, 65 (2010). As such, anyone who directly or indirectly, or through an agent or any other person, engages, suffers, or permits any

2

person to work or exercises control over the wages, hours, or working conditions of any person, may be liable for violations of the California Labor Code as to that person. *See,* Labor Code section 558.1.

9. California law also permits and recognizes the piercing of a corporate veil between sister companies and under the single enterprise rule. *Hasso v. Hapke* (2014) 227 Cal.App.4th 107, 155; *Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486, 512. The single enterprise rule applies where "there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it." *Hasso* 227 Cal. App. 4th at 155; *Greenspan*, 191 Cal.App.4th at 512.

10. Here, Defendants MODIS, INC., and MODIS E&T, LLC, share the same headquarters, same website, www.modis.com, the same officers, and directors. As such, Defendants MODIS, INC., and MODIS E&T, LLC, are, for all intents and purposes, the same entity in the eyes of the public and their employees. In fact, on their LinkedIn profiles, the employees of Defendants MODIS, INC., and MODIS E&T, LLC, simply state that they work for "Modis" or "Modis Engineering" without any distinction made between the two companies.

12. Plaintiff is informed and believes, and based thereon alleges, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants.

**IV.   CLASS ALLEGATIONS**

13. Plaintiff brings this action on behalf of himself and all other persons similarly situated pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

14. Plaintiff is a member of and seeks to certify his claims alleged in his First Claim for Relief on behalf of a class defined as follows:

> All persons who (1) applied for employment with the Defendants for a position within the United States of America within two years of the filing of this Complaint through the date of trial and/or preliminary approval of a settlement, (2) were offered a position with Defendants conditional upon the completion of a consumer report, and (3) had that offer of employment rescinded due to items contained within the consumer report.

3

**CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

15. Defendants and their shareholders, officers, directors, and managing agents are excluded from the Class defined above. Plaintiff reserves the right under Rule 23 to amend or modify the class definitions with greater particularity or further division into subclasses or limitation to particular issues as warranted as additional facts are discovery by Plaintiff during his future investigations.

16. <u>Numerosity</u>: Although Plaintiff does not, as yet, know the exact size of the class defined above, based upon the nature of the Defendants' business, Plaintiff believes that there are numerous members of the class defined above, and that such members are geographically dispersed throughout the United States of America. Thus, the class defined above is sufficiently numerous to make joinder impracticable. The disposition of the claims of the members of the class defined above through this class action will benefit both the parties and this Court. In addition, the class defined above is readily identifiable from information and records in the possession of Defendants as well as the members of the class.

17. <u>Commonality</u>: There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to each class and subclass predominate over questions that may affect individual class members, including the following:

   a. Whether the Defendants obtained consumer report information on employees and prospective employees;

   b. Whether the Defendants use or used the consumer reports to take adverse action against the employees or prospective employees;

   c. Whether the Defendants notified the employees or prospective employees of their intent to take adverse action against the employees or prospective employees based on items contained in the consumer reports prior to such adverse action being taken;

   d. Whether the Defendants provided their employees or prospective employees with copies of the consumer reports prior to Defendants taking adverse action against the employees and prospective employees;

4

**CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

   e. Whether the Defendants provided their employees or prospective employees with a summary of their rights under the Fair Credit Reporting Act prior to Defendants taking adverse action against the employees and prospective employees;

   f. Whether such conduct violates the Fair Credit Reporting Act;

   g. Whether Defendants willfully violated the Fair Credit Reporting Act;

   h. The proper measure of actual, statutory and punitive damages; and

   i. The proper measure of reasonable attorneys' fees and costs to be awarded to Plaintiff.

18. <u>Typicality</u>: Plaintiff's, the class members' claims arise from and were caused by Defendants obtaining and using consumer reports and/or investigative consumer reports (commonly known as and referred to by Defendants as "background reports") on Plaintiff and the members of each class failed to provide adequate notice and failing to provide notice prior to taking adverse action against Plaintiff and the Class, and for failing to provide a copy of the background reports, and summaries of rights under the Fair Credit Reporting Act. For these violations, Plaintiff and members of the class seek actual, loss of wages, statutory or nominal, and punitive damages, injunctive relief, and expenses of litigation including costs and attorneys' fees.

19. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the class since he is a member of the class he seeks to represent and Plaintiff has no interest that is contrary to or in conflict with those members of the class he seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation involving the FCRA violations alleged herein to further ensure such protection and he intends to prosecute this action vigorously.

20. <u>Superiority</u>: The prosecution of separate actions by individual members of the class create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendants and could lead to repetitious trials of the numerous common questions of fact and law. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance

1  as a class action. As a result, a class action is far superior to other available methods for the fair and
2  efficient adjudication of this controversy.

3  21. Proper and sufficient notice of this action may be provided to each class member
4  through notice by such means as direct mail, electronic mail, publication on the internet, and/or
5  television, radio, and/or print media outlets.

6  23. Plaintiff and the Class Members have suffered irreparable harm and damages as a
7  result of Defendants' wrongful conduct as alleged herein, which is ongoing. Absent a representative
8  action, Plaintiff and each class and subclass continue to be damaged, thereby allowing these
9  violations of law to proceed without remedy, and allowing Defendants to continue their wrongful
10 conduct.

11 24. In addition, Defendants have acted or refused to act on grounds generally applicable
12 to each member of the class, thereby making appropriate final classwide injunctive relief with
13 respect to the class as a whole.

## V.    FACTUAL ALLEGATIONS

25. The FCRA is Congress' effort to ensure that consumer reporting agencies are required to report information in a manner which is "fair and equitable to the consumer," and "with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. §1681(b).

26. To achieve its goals, Congress requires consumer reporting agencies to follow stringent procedures to ensure that whenever criminal history information is reported, it is accurate, complete, and up to date.

27. All background checks are defined as consumer reports under the FCRA. Specifically, the FCRA defines a consumer report as:

> **In general.**—The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
> **(A)** credit or insurance to be used primarily for personal, family, or household purposes;
> **(B)** employment purposes; or

**(C)** any other purpose authorized under section 1681b of this title.

15 U.S.C. 1681a(d)(1).

28. The accuracy and completeness of the information notwithstanding, Congress has further required employers to provide consumers with notice of their rights under the Act and a copy of their consumer report prior to taking any adverse action. This notice is intended to provide applicants with an opportunity to dispute the information reported.

29. Pursuant to 15 U.S.C. § 1681g, consumer reporting agencies are further required, on request, to provide consumers with the full file maintained on the consumer by the reporting agency. The "full file" includes "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The purpose of this requirement is to allow consumers to determine the accuracy of the information set forth in their files and to determine the bases upon which any adverse actions were taken. See *Gillespie v. Trans Union Corp.*, 482 F.3d 907 (7th Cir. 2007).

30. In addition, the FCRA also imposes strict regulations prohibiting consumer reporting agencies from reporting obsolete information. Obsolete information includes any adverse information, other than a conviction for a crime, that antedates the report by more than seven years. 15 U.S.C. § 1681c(a)(2) and (5).

31. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose permitted under the FCRA. 15 U.S.C. §1681e(a).

32. Prior to furnishing a consumer report for employment purposes, the consumer reporting agency must obtain a certification from the user that the user will not use the information disclosed in the consumer report to violate any applicable federal or state equal employment opportunity law or regulation. 15 U.S.C. § 1681b(b)(1)(A)(ii).

33. Indeed, prior to ordering any consumer report for employment purposes, the user of the information (the employer) must provide the consumer (the employee or potential employee) with "a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." 15 U.S.C.

1681b(b)(2(A)(i). Further, the user must obtain from the consumer a written authorization. 15 U.S.C. 1681b(b)(2)(A)(ii).

34. In addition, the FCRA limits the use of the report to make adverse actions against the employee, stating that an employer cannot take adverse action against the employee unless the employer does the following:

> in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
> (i) a copy of the report; and
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3)(1) of this title.

15 U.S.C. §1681b(b)(3)(A)(i) and (ii).

35. California has enacted two statutes that govern consumer reports. Specifically, the ICRAA covers reports that contain information about "a consumer's character, general reputation, personal characteristics, or mode of living." Civ. Code § 1786.2(c). Meanwhile, the CCRAA covers reports containing "information ... bearing on a consumer's credit worthiness, credit standing, or credit capacity." Civ. Code § 1785.3(c). The ICRAA imposes stricter duties and more severe penalties on persons compiling or requesting reports containing character information than the CCRAA does on those compiling or requesting reports containing creditworthiness, credit standing, or credit capacity information. The two statutes work together to protect consumers from unfair and harmful reporting tactics. See Cal. Civ. Code §§ 1785.1(b), 1786(b) (declaring that both ICRAA and CCRAA address "a need to insure that [investigative consumer and consumer credit] reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.").

36. The ICRAA's consumer protections are clearly stated in the ICRAA. All employers who request "investigative consumer reports,"[1] as well as the reporting agencies that prepare them, can easily determine the scope of the ICRAA and comply with its requirements. Where a consumer report triggers the protections of both the ICRAA and the CCRAA, the entity who orders the report

---

[1] The ICRAA defines the term "investigative consumer report" as "a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through any means." Civ. Code § 1786.2(c).

8

**CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

can - and must - comply with both acts by meeting the stricter disclosure requirements of the ICRAA.

37. Violation of any of these disclosure provisions subjects an investigative reporting agency - or a employer ordering a report - to potentially significant penalties. The ICRAA establishes a minimum recovery of $10,000 for any consumer harmed by an investigative reporting agency's or a user's violation of its disclosure requirements. Civ. Code, § 1786.50(a). The ICRAA also allows the court to award punitive damages for willful or grossly negligent violation of the statute. Civ. Code, § 1786.50(b). These penalties are intentionally serious, as prior penalties were considered simply "not a sufficient incentive" to insure compliance. (Sen. Jud. Com., Analysis of Sen. Bill No. 1454 (1997-1998 Reg. Sess.) as amended April 27 1998. By mandating "disclosure, disclosure, disclosure[,]" and bolstering its disclosure requirements with significant potential penalties, the ICRAA helps consumers protect themselves and to safeguard their privacy. (Sen. Rules Com., Off. of Sen. Floor Analyses, Bill Analysis, Senate Bill No. 1454 (1997-1998 Reg. Sess.), as amended June 18, 1998, at p. 7; Assem. Com. On Consumer Protection, Governmental Efficiency, and Economic Development, Hearing on Sen. Bill No. 1454 (1997-1998 Reg. Sess.) June 23, 1998.

39. Investigative consumer reporting agencies exercise "grave responsibilities" in decision-making that impacts fundamental aspects of a consumer's life and livelihood. Civ. Code § 1786(a), (b)(2). Mistakes in investigative consumer reports can have "a potentially devastating impact on an individual's life." (Assem. Com. On Consumer Protection, Governmental Efficiency, and Economic Development, Hearing on Sen. Bill No. 1454 (1997-1998 Reg. Sess.) June 23, 1998. False information "can plague a victim for years, impeding his or her ability to find or keep a job ...." (Sen. Jud. Com., Analysis of Assem. Bill No. 655 (2001-2002 Reg. Sess.) as amended Aug. 20, 2001, p. 9.)

40. Despite these grave concerns, Defendants failed to comply with the FCRA and ICRAA in several significant ways.

41. Plaintiff applied for and was offered employment by Defendants ("Modis") to work for one of Modis' client's in the Silicon Valley area as a maintenance engineer for Modis' client,

9

**CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Applied Materials. This was to be an 18-month assignment which paid $30 per hour, with benefits, and while initially a temporary position, it would give him the opportunity for permanent hire with the client. After interviewing for the position Plaintiff was informed by Defendants' employee, Thomas Wirfs II, that Plaintiff was hired for the position.

42. As part of his employment application, Plaintiff was required to undergo a background check. To accomplish that, Plaintiff was required to fill out consent forms and various other paperwork at Modis' offices. When he arrived, he was handed a stack of papers, including the consent forms to undergo a background check, and was asked to sign all of them on the spot, which he did.

43. After submitting his paperwork allowing both the background check and the employment verification check, Plaintiff was informed by Modis that the offer of employment was rescinded based on items contained in his background check. Additionally, Mr. Wirfs informed Plaintiff that Modis would not hire Plaintiff for any position based on the background check. Plaintiff then requested a copy of his background check, on multiple occasions via email, and was never provided with a copy of the report.

44. Thus, prior to its decision to rescind Plaintiff's offer of employment, **Modis did not provide Plaintiff with a copy of his consumer report, and did not provide him with a summary of his rights under the FCRA.** Not only did Modis fail to comply with the FCRA, but it did so after Plaintiff asked **repeatedly for a copy of his consumer report**.

45. In addition to the FCRA, the ICRAA, Cal. Civil Code §1786, et. seq., provides protections to employees who undergo a background check (called an investigative consumer report by the statute), for employment purposes. Like the FRCA, the ICRAA requires that employers who order background checks on their employees provide them with a disclosure regarding the background check in a standalone document. Cal. Civil Code §1786.16. It also requires that an employer who undertakes an adverse action against the employee based on items contained in the background check provide the employee with a copy of the background check, along with a summary of rights under the ICRAA. Cal. Civil Code §1786.40. The report and the summary of rights must be provided **before** any adverse action can be undertaken.

46. Thus, based upon its written policy and practice, Modis did not provide Plaintiff and the other members of the Class with a copy of the consumer report as required by the FCRA, a summary of rights under the FCRA as required by the FCRA, and do so a reasonable time before taking an adverse employment action against him as required by the FCRA and the ICRAA.

**FIRST CLAIM FOR RELIEF**
**For Violation of the Federal Credit Reporting Act**
**(Violation of 15 U.S.C. § 1681b(b)(3)(A) and 15 U.S.C. § 1681m)**
**(On Behalf of Plaintiff and the Class Against All Defendants)**

47. Plaintiff alleges and incorporates by this reference the allegations in all preceding paragraphs.

48. Plaintiff and the Class members are "consumers," as defined by the FCRA, 15 U.S.C. § 1681a(c).

49. Defendants MODIS, INC., and MODIS E&T, LLC, are both defined as a "person," as defined by 15 U.S.C. § 1681a(b) of the FCRA, that regularly uses consumer reports for employment purposes.

50. Defendants used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and members of the Class.

51. Defendants violated the FCRA by failing to provide Plaintiff and the Class Members with a copy of the consumer report that was used to take adverse employment action against them and a summary of their rights under the FCRA. See 15 U.S.C. § 1681b(b)(3)(A).

52. The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the Class Members under 15 U.S.C. § 1681b(b)(3)(A). In fact, even when Plaintiff repeatedly asked for a copy of the consumer report which formed the basis of the rescission of his offer of employment, Defendants refused to do so.

53. Defendants' conduct in violation of 15 U.S.C. §§ 1681b(b)(3)(A) was and is willful. Defendants acted in deliberate or reckless disregard of its obligations and the rights of its employees and job applicants, including Plaintiff and the Class Members. The foregoing violations were willful. Defendants knew or recklessly disregarded the fact that they must provide a copy of the consumer report and a summary of rights under the FCRA, to Plaintiff and the Class Members

before taking any adverse action against them, as required by the FCRA. Defendants acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681b(b)(3)(A). Defendants' willful conduct is reflected by, among other things, the following facts:

    a. Defendants are corporations with access to legal advice through outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful;

    b. Defendants knew or had reason to know that its conduct was inconsistent with the plain language of the statute;

    c. Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and,

    d. Because subsections (i) and (ii) are not subject to a range of plausible interpretations, Defendants knew the failure to provide a copy of the consumer report, and to provide a summary of rights under the FCRA was clear and unambiguous, regardless of their subjective interpretation of the statute's requirement of prior notice.

54. The FCRA requires Defendants, as users of consumer reports for employment purposes, before taking adverse action based in whole or in part on the consumer reports, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA. 15 U.S.C. § 1681b(b)(3)(A)(I), (ii).

55. Defendants negligently and/or willfully violated section 1681b(b)(3) of the FCRA by failing to provide to Plaintiff and the Class Members about whom the report relates a copy of the report and a written description of the consumer's rights under the FCRA a sufficient time before Defendants took adverse action based in whole or in part on the consumer report.

56. Pursuant to 15 U.S.C. §§ 1681n and 1681o of the FCRA, Defendants are liable for negligently and/or willfully violating 15 U.S.C. § 1681b(b)(3) by failing to provide to the consumer about whom the report relates a copy of the report and a written description of the consumer's rights under the FCRA a sufficient time before it took adverse action against Plaintiff and the Class Members based in whole or in part on the consumer report.

57. As a result of such conduct, Plaintiff and the Class Members are entitled to statutory damages of not less than $100 and not more than $1,000 of these violations pursuant to 15 U.S.C. §1681n(a)(1)(A).

58. As a result of such conduct, Plaintiff is entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff is further entitled to reasonable attorneys' fees in connection with this claim. 15 U.S.C. §1681n(a)(3).

**SECOND CLAIM FOR RELIEF**
**For Violation of the Investigative Consumer Reporting Agencies Act (ICRAA)**
**(Violation of Cal. Civil Code § 1786.40)**
**(On behalf of the Plaintiff Against All Defendants)**

59. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

60. At all relevant times, Plaintiff was a consumer as that term is defined in Civil Code § 1786.2(b), and Defendants were persons as that term is defined in Civil Code § 1786.2(a) and procured and used an investigative consumer report as that term is defined in Civil Code § 1786.2(c) on Plaintiff for employment purposes under Civil Code § 1786.12(d)(1).

61. Civil Code § 1786.40(a) states that whenever employment is denied, under circumstances in which a report regarding the consumer was obtained from an investigative consumer reporting agency, the user of the investigative consumer report shall so advise the consumer against whom the adverse action has been taken and supply the name and address of the investigative consumer reporting agency making the report.

62. Civil Code § 1786.40(b) states that whenever employment is denied under circumstances in which a report regarding the consumer was obtained from an investigative consumer reporting agency, the user of the information shall, "within a reasonable period of time, and upon the consumer's written request for the reasons for the adverse action received within 60 days after learning of the adverse action, disclose the nature and substance of the information to the consumer. The user of the information shall clearly and accurately disclose to the consumer his or her right to make this written request at the time the adverse action is communicated to the consumer."

63.     Defendants violated Civil Code § 1786.40(a) because when they refused, despite repeated requests, to provide Plaintiff with the with the name and address of the investigative consumer reporting agency making the reports upon which they were taking adverse action.

64.     Defendants further violated Civil Code § 1786.40(b) by not informing Plaintiff of his right to request the nature and substance of the information from which Defendants made their decision to rescind Plaintiff's offer of employment. Defendants did not "clearly and accurately" disclose to Plaintiff his right to make a written request at the time of the adverse action to that he had a right to request the nature and substance of the information which lead to the adverse action. In fact, Plaintiff did request this information, in writing, but Defendants refused to provide the information, in violation of Civil Code §§ 1786.16(b)(2) and 1786.40(b).

65.     Defendants Payment were grossly negligent in violating or willfully violated the ICRAA by acting without a good faith, reasonable belief in the legality of their actions, and/or in deliberate or reckless disregard of their legal obligations and the rights of Plaintiff under the statute.

66.     Plaintiff has been damaged by these violations and seek the following relief pursuant to pursuant to Civil Code § 1786.50:

   a. Any actual damages sustained by the consumer as a result of the failure or, ten thousand dollars ($10,000), whichever sum is greater;

   b. the costs of the action together with reasonable attorney's fees as determined by the court; and

   c. In the case of a violation that was grossly negligent or willful, punitive damages.

## **DEMAND FOR JURY TRIAL**

67.     Plaintiff hereby demands a jury trial on all causes of action and all claims with respect to which they have a right to a jury trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, and all persons similarly situated, requests of this Court the following relief:

1. For statutory damages, general, compensatory damages, and punitive damages according to proof at trial;

2. An award of appropriate equitable and/or injunctive relief, including but not limited to preliminary, permanent, and mandatory injunctive relief from disseminating illegally obtained background reports of Plaintiff without his prior consent, and to maintain the confidentiality of the information of Plaintiff already obtained by Defendants way of its illegal practices set forth above, and prohibiting the Defendants and their agents from committing further unlawful conduct in violation of the ICRAA and the FCRA;

3. Costs of suit, including attorneys' fees and costs pursuant to Civil Code §1786.50, 15 U.S.C. § 1681n, 15 U.S.C. § 1681o, and California Code of Civil Procedure § 1021.5;

4. For interest at the legal rate of 10% per annum;

5. Such further relief as the Court deems just and proper.

Dated: April 2, 2019        POTTER HANDY LLP


By: /s/ *James M. Treglio*
    Mark Potter, Esq.
    James M. Treglio, Esq.

    Attorneys for Plaintiff, Danilo Victorio